UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

_____
In Re:                              )
                                    )
SOMERVILLE BREWING COMPANY          )    Chapter 11
                                    )    Case No. 19-13300-FJB
DEBTOR                              )
_____)

OBJECTION OF MASSACHUSETS GROWTH CAPITAL
CORPORATION TO DEBTOR'S MOTION TO EXTEND
USE OF CASH AND NON-CASH COLLATERAL

Massachusetts Growth Capital Corporation ("MGCC"), a secured creditor of Somerville Brewing Company, the above-captioned Chapter 11 Debtor the ("Debtor") hereby objects to the *Debtor's Motion to Extend Use of Cash and Non-Cash Collateral* [Doc. No. 42] (the "Cash Collateral Motion") for the reasons set forth below:

1. MGCC holds a second priority security interest in all of the assets of the Debtor junior only to: (i) the security interest held by Cambridge Trust Company; and (ii) properly perfected purchase money security interests in equipment of the Debtor, if any. MGCC's security interest is described in paragraph 9 ii. of the *Debtor's Motion for Interim and Final Authorization to use Cash and Non-Cash Collateral and Request for Emergency Determination* [Doc. No. 6] (the "Initial Cash Collateral Motion"). According to the Initial Cash Collateral Motion, paragraph 9 ii, MGCG holds a security interest in all of the Debtor's assets securing a claim in the amount of $464,874.85.

2. The instruments, agreements and documents that establish MGCC's claim and perfected security interest in the Debtor's assets include, among others, the following: (i) Secured Term Note in the stated amount of $464,874.85, dated May 1, 2018, executed by Somerville Brewing Company in favor of MGCC, a true copy of

1

which Secured Term Note is attached hereto as Exhibit A; (ii) Loan and Security Agreement, dated June 29, 2016, executed by Somerville Brewing Company in favor of MGCC, a true copy of which Loan and Security Agreement is attached hereto as Exhibit B; (iii) Amendment to Loan and Security Agreement, dated May 1, 2018, executed by Somerville Brewing Company in favor of MGCC, a true copy of which Amendment is attached hereto as Exhibit C; and (iv) UCC-1 financing statement describing Somerville Brewing Company, as Debtor, and MGCC, as secured party, and filed with the Delaware Department of State on June 30, 2016, a true copy of which UCC-1 is attached hereto as Exhibit D. The foregoing documents, described in clauses (i) through (iv) above, as the same may have been amended from time to time, are hereinafter referred to collectively as (the "Loan Documents"). The Debtor's obligations owed to MGCC under the Loan Documents are guaranteed by the Debtor's principals, Caitlin Jewell Leiter and Robert Jeffrey Leiter.

3.  As of November 1, 2019, MGCC asserts the following claim, exclusive of attorneys' fees and costs of collection, under the Loan Documents:

| | |
|---|---|
| Principal: | $464,874.85 |
| Interest (Sept. & Oct 2019): | $   7,960.18 |
| Total: | $472,835.03 |
| Per Diem: | $      127.36 |

4.  MGCC asserts that, as of the Debtor's Chapter 11 petition date (the "Petition Date"): (i) MGCC's pre-petition liens and security interests are valid, binding, enforceable, and perfected second priority liens in the Debtor's assets and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (ii) MGCC's liens and security interests secure all obligations owed under the Secured Term Note and the other Loan Documents, which

2

obligations are legal, valid, and binding obligations of the Debtor and its guarantors, enforceable in accordance with the terms of the Loan Documents.

5.      The Debtor has attached as Exhibit A to the Cash Collateral Motion a Preliminary reconciliation showing Cash Receipts and expenses paid during the period from September 27, 2019 to October 20, 2019 which reconciliation shows Cash Receipts in the amount of $198,240.00 during that time period. The Debtor had projected Cash Receipts in the amount of $283,755.00 for the period from September 27, 2019 to October 26, 2019. Accordingly, for the time period that is only six days less than the projected time period, the Debtor's Cash Receipts were approximately seventy percent of what the Debtor had projected for the full time period. Although the Debtor shows net income of $52,407.00 on its reconciliation, the Cash Collateral Motion makes clear, in paragraph 4 thereof, that the reconciliation includes only those expenses paid through October 20, 2019 and in footnote 1 thereof discusses other expenses that "shall be paid when due," likely at or near the end of the month.

6.      Accordingly, it is currently difficult to assess the Debtor's net income at this point for the projected time period, however, it appears likely that its Cash Receipts for the time period through October 27, 2019 will be substantially less than projected. MGCC has been advised that the Debtor owes unpaid pre-petition meals taxes in the amount of approximately $200,000.00, thus indicating a substantial pre-petition shortfall in net income and inability to pay its debts as they became due pre-petition. The Debtor has also attached, as Exhibit B to the Cash Collateral Motion, a proposed Budget for its operations for the months of October, November, December 2019 and January 2020 (the "Budget").

7. Given the lack of financial information currently available from the Debtor and the distinct possibility that the Debtor may operate at a net loss going forward to the detriment of its secured and unsecured creditors, the Debtor's proposed "Final Order Authorizing Debtor's Use of Cash Collateral" (the "Proposed Order") is woefully deficient. The Proposed Order provides for unfettered, perpetual use of an unlimited amount of cash collateral (projected to total $911,682 over the next three months) with no remedies for secured creditors in the event that the Debtor fails to comply with its Budget or otherwise impairs the secured creditors' interest in their collateral. The Proposed Order lacks any provisions for adequate protection for secured creditors in the form of replacement liens, monthly payments or otherwise despite the fact that secured creditors' cash collateral and other collateral is depreciating in value every day. Other than the requirement that the Debtor file monthly reconciliations of its Budget on or before the 15th day of each month for the previous month, the Proposed Order does not contain any provisions for financial reporting to secured creditors or any "checkpoints" at which the Debtor's financial performance can be measured.

8. The Debtor makes its request without providing any information concerning its financial condition, the reason for its filing bankruptcy, its assets and liabilities and other information from which the Bankruptcy Court (the "Court"), MGCC, or other interested parties could assess the reasonableness of the request to use cash collateral. Nor does the Debtor propose any means, other than the monthly one-page reconciliations, by which such parties would be able to monitor the status of the collateral or meaningfully assess the Debtor's post-petition performance. Furthermore, the Debtor's

Proposed Order contemplates cash collateral use with total impunity; in other words, it is entirely devoid of any consequences from Debtor's failure to adhere to its own proposed Budget or any other tangible performance metrics. The usual cash collateral use termination events of case conversion, case dismissal, or trustee/examiner appointment are all absent. There are no post-petition payments or replacement liens proposed; no requirement that the Debtor adhere to its own Budget; no financial covenants or tests, among other deficiencies.

9. For the above reasons and those described below, MGCC requests this Court: (a) deny the relief sought in the Cash Collateral Motion; or (b) alternatively, to the extent that the Court grants the relief sought, MGCC requests that such relief be conditioned upon the Debtor providing MGCC with the full range of adequate protection described below.

10. In accordance with section 363(c)(2) of the Bankruptcy Code, a debtor is prohibited from using a secured creditor's "cash collateral" unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use. . ." 11 U.S.C. § 363(c)(2). This restriction is critical "for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor." *In re Earth-Lite, Inc.*, 9 B.R. 440, 443 (Bankr. M.D. Fla. 1981); *see also In re EES Lambert Associates*, 62 B.R. 328, 343 (Bankr. N.D. Ill. 1986) ("[c]ash collateral is a unique form of collateral that requires special protection since it is most likely to be consumed during the reorganization process and is at times subject to change on an almost daily basis.").

5

MGCC does not consent to use of cash collateral under the terms set forth in the Proposed Order.

11. Accordingly, this Court may grant the authorization over MGCC's objection only if MGCC is provided with adequate protection. It is the Debtor's burden to demonstrate that the adequate protection it is proposing to provide to MGCC is sufficient. *See* 11 U.S.C. § 363(p)(1). In this regard, the Bankruptcy Court for the Central District of Illinois has indicated:

> "Adequate protection is designed to preserve the secured creditor's position as it existed at the time of the bankruptcy filing.... A finding of adequate protection should be premised on facts, or on projections grounded on a firm evidentiary basis. Congress did not contemplate that a secured creditor could find its position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects.... The burden is on the movant to prove that existing lienholders are adequately protected."
> 11 U.S.C. § 364(d)(2) [internal citations omitted].

*In re Windsor Hotel, L.L.C.*, 295 B.R. 307, 314 (Bankr. C.D. Ill. 2003). *See also In re Lyons*, 193 B.R. 637 (Bankr. D. Mass. 1996); *In Re: Mosello*, 195 B.R. 277, 287 (Bankr. S.D.N.Y. 1996).

12. Cash collateral is the highest and best form of collateral, and because it is rapidly consumed by a debtor's ongoing operations, there is a high standard for adequate protection of a lender's interest. *In re Earth-Lite, Inc.*, 9 B.R. at 443. Adequate protection is required to protect against the decline in value caused both by a debtor's use of cash collateral and also by general economic conditions. *See generally In re Markos Gurnee Partnership*, 252 B.R. 712 (Bankr. N.D. Ill. 1997) (adequate protection meant to assure that secured creditor does not suffer decline in value of interest in estate's property); *In re*

6

*Addison Prop. Ltd. P'ship*, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995); *In re 160 Bleecker Street Assocs*, 156 B.R. 405, 413 (S.D.N.Y. 1993). "Exactly what constitutes adequate protection must be decided on a case-by-case basis.... The focus of the requirement is to protect a secured creditor . . . from diminution in the value of its interest in collateral during the reorganization process." *In re Energy Partners*, 409 B.R. 211, 236, (Bankr. S.D. Tex. 2009) [internal citations omitted]; *see also In re Carbone Companies, Inc.,* 395 B.R. 631, 634 (Bankr. N.D. Ohio 2008); *In re O. P. Held, Inc.*, 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987).

      13.    Three non-exclusive methods of providing adequate protection are specified in section 361 of the Bankruptcy Code: (1) periodic cash payments to offset any decrease in the value of the creditor's interest; (2) additional or replacement liens on debtor's property; and (3) such other relief resulting in the "indubitable equivalent" of the creditor's interest. *See* 11 U.S.C. § 361. The Debtor, in the Proposed Order, offers none of these methods of adequate protection.

      14.    MGCC's pre-petition security interest in the collateral continues with respect to all proceeds, product, offspring, or profits of the collateral. See 11 U.S.C. § 552(b); *Financial Sec'y Assur., Inc. v. Tollman-Hundley Dalton, L.P*., 74 F.3d 1120, 1124-25 (11th Cir. 1990). Consequently, the Debtor's offer to provide MGCC with adequate protection in the form of a replacement lien against the very same post-petition collateral would grant MGCC nothing more than it already had as of the petition date. *See In re Union-Go Dairy Leasing, LLC*, 2010 WL 1848485 (Bankr. S.D. In. 2010*); see also In re Wiegmann*, 95 B.R. 90, 94 (Bankr. S.D. Ill. 1989) (recognizing section 552(b)(1) exception). That is not adequate protection, it is illusory protection."); *In re*

*Putnal*, 483 B.R. 799, 804 (Bankr. M.D. Ga 2012) ("Virtually every case addressing this issue has held that the proffer of a replacement lien on post-petition rents is illusory by virtue of § 552(b) of the Bankruptcy Code") (*quoting In re Smithville Crossing, LLC*, 2011 Bankr. LEXIS 4605, *31 (Bankr. E.D.N.C. 2011)).

15. In addition to providing adequate protection in cash collateral, the Debtor must also be required to provide MGCC with adequate protection for its use of its other tangible collateral. Although the Debtor's use of such collateral is implicit in the relief requested through the Cash Collateral Motion, it does not appear that the Debtor is offering any adequate protection with respect to the continued use of such collateral. MGCC's other tangible collateral (principally inventory, furniture, trade fixtures and equipment used in the conduct of the business in the normal course of a retail operation), like the cash collateral, are inherently wasting assets that deteriorate in value with every passing day. *In re Zeoli*, 249 B.R. 61, 64 (Bankr. S.D.N.Y. 2000) (noting, in context of adequate protection of creditor's interest in a car, that "[t]here can be no doubt that . . . the vehicle, like almost all used cars, is a wasting asset");

16. Any argument by the Debtor that MGCC's interest in the collateral is being preserved by the use of its cash collateral to continue its business operations is similarly flawed. The continued operation of the Debtor's business promises a consumption, not preservation, of MGCC's collateral. To the extent such consumption has the effect of enhancing the Debtor's business as a going concern – something MGCC believes to be little more than a pipedream – neither MGCC nor the collateral derive any demonstrable benefit from any such enhancement.

17. Nevertheless, to the extent the Court allows the Debtor to use the collateral, including cash collateral, MGCC submits that the Court should, at a minimum, condition such use on, among others things, the following terms and conditions:

(a) <u>Period of Use</u> – Given the Debtor's failure to provide any financial statements or other documentation showing its historical prepetition financial performance (including historical monthly Cash Receipts) or to file its schedules of assets and liabilities and statement of financial affairs prior to seeking entry of the Proposed Order, the Debtor's proposal for a three (3) month period of unfettered use of cash collateral is insupportable. The initial period of cash collateral and other collateral use should be limited to what is absolutely necessary in the circumstances to avoid immediate and irreparable harm to the estate, and in any event not extend beyond November 30, 2019 at which time, MGCC, other creditors and this Court will have at least one month's financial performance (October 2019) to review. By limiting the use period in this fashion, interested parties - the Court and MGCC included – will be better able to assess to what extent, if any, additional relief pertaining to use of collateral is appropriate. By that time, certain creditors may also have appraised the Debtor's assets providing additional information by which to determine adequate protection.

(b) <u>Budget; Monthly Covenants</u> – Debtor's use of cash collateral should be subject to strict adherence to, and solely for the purposes set forth in the Budget. The Debtor, assuming that it will be reporting based upon cash receipts and disbursements, should be required to adhere to certain post-petition performance targets, inclusive of limited budget variance relief, as follows:

(i)     for any monthly period, the actual monthly receipts and collections during such monthly period should not be less than ninety percent (90%) of the projected monthly receipts set forth on the Budget for such monthly period;

(ii)    for any monthly period, the actual monthly disbursements during such monthly period should not exceed one hundred ten percent (110%) of the projected monthly disbursements set forth on the Budget for such monthly period;

(iii)   The Debtor should be required to report to MGCC, the U.S. Trustee and any statutory committee on the 15th day of each month beginning on November 15, 2019 and continuing on the same day of each month thereafter on both a line item and cumulative basis with respect to the immediately preceding month.

(iv)    Any failure to comply with the limitations contained in sub-paragraph (b)(i)-(ii) above should constitute a "Material Budget Deviation" and effect an automatic and immediate termination of the Debtor's authority to use cash collateral absent further order of the Court.

(c)     Additional Default/Termination Events – The Debtor's use of cash collateral should also be subject to automatic termination upon the occurrence of any one or more of the following material events:

(i)     the Debtors' use of cash collateral for any purpose or in any amount (subject to sub-paragraph (b) above) not in compliance with the Budget;

(ii)    the occurrence of a Material Budget Deviation;

(iii)   any failure by the Debtor to make any payment required under the order authorizing use of cash collateral, including, but not limited to, in respect of adequate protection (discussed more fully below);

10

(iv)   the appointment of a chapter 11 trustee or examiner with duties in addition to those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code;

(v)   conversion of the Debtor's Chapter 11 Case to a case under chapter 7;

(vi)   dismissal of the Debtor's Chapter 11 Case; and/or

(vii)   reversal, vacatur, or reconsideration of any order authorizing use of cash collateral by the Court or any appellate court;

The occurrence and continuation of any one or more of the foregoing events would constitute an "Event of Default." Upon the occurrence of an Event(s) of Default, MGCC should be entitled to declare a termination, reduction or restriction of the Debtor's ability to use cash collateral pending further order of the Court. If the Debtor fails to obtain supplemental relief from the Court within five (5) business days of MGCC's delivery of a termination notice to Debtor's counsel and the filing of same with the Court, the automatic stay should automatically be terminated at the end of such notice period without further notice or order, and MGCC should be permitted to exercise all remedies set forth in the Loan Documents, and as otherwise available at law without further order of or application or motion to the Court.

(d)   <u>Adequate Protection</u> – MGCC's adequate protection grant should include the following:

(i)   <u>Post-petition Interest</u> - Monthly cash interest payments at the applicable contractual non-default rate set forth in the Loan Documents with respect to MGCC's prepetition debt (provided that MGCC shall be entitled to accrue additional interest at the applicable Default Rate (as defined in the Loan Documents); provided, however, if MGCC's secured claims are later determined by this Court to have been undersecured as

11

of the Petition Date, then the Court reserves the ability to reallocate and re-apply any payments authorized pursuant to this subclause to reduce the outstanding principal balance owed under the Loan Documents, or as otherwise determined by this Court; additionally, the Debtor should be required to also pay contract rate interest to the holder of the first priority security interest in its assets, Cambridge Savings Bank;

(ii) Adequate Protection Liens – Replacement, valid, binding and enforceable, fully perfected liens on, and security interests in, all of the Debtor's assets whether existing as of the Petition Date or thereafter arising or acquired, and whether subject to any other enforceable lien or security interest as of the Petition Date, to the same extent, priority and enforceability of the liens and security interests held by MGCC as of the Petition Date;

(iii) Superpriority Claim – An allowed senior administrative expense claim (the "Superpriority Claim") with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, as provided under section 507(b) of the Bankruptcy Code, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under the Bankruptcy Code. The Superpriority Claim shall be payable from all property of the Debtor's estate;

(e) Financial Reporting – In addition to the Budget reconciliations to be delivered and filed with the Court on the 15th day of each month as proposed in the Proposed Order, the Debtor should deliver to MGCC copies of its monthly operating reports simultaneously with the Debtor filing said reports with the office of the United

States Trustee. In addition, MGCC should be entitled to inspect and to appraise its collateral.

(f) <u>Limitation of Third-Party Challenge Rights</u> – the right of a duly appointed statutory committee or any other party-in-interest with requisite standing that has been sought and granted by this Court to bring an adversary proceeding, cause of action, claim objection, claim, defense, or other challenge to contest the extent, validity, priority or perfection of any and all of MGCC's pre-petition liens and security interests and/or pre-petition claims against the Debtor, or to seek the avoidance, recharacterization or subordination of MGCC's claims or interests (hereinafter a "<u>Challenge Proceeding</u>"), should be fully reserved and preserved; however, the Court should also provide that if a Challenge Proceeding is not commenced by the later of: (x) for any statutory committee, sixty (60) days following the appointment of the first such statutory committee; or (y) for any party-in-interest other than a statutory committee, sixty (60) days following entry of the Court's order authorizing use of cash collateral, then any such challenge rights and the right to commence a Challenge Proceeding shall be extinguished, and any and all such challenges and objections by any party shall be deemed to be forever waived and barred, and MGCC's pre-petition claim shall be deemed to be an allowed secured claim and MGCC's pre-petition liens and security interests shall be deemed to be valid, perfected and enforceable within the meaning of section 506 of the Bankruptcy Code for all purposes. For the avoidance of doubt, in the event the Debtor's Chapter 11 Case is converted to a case under chapter 7 or if a chapter 11 trustee is appointed prior to expiration of the above challenge period, then the challenge period shall not expire until sixty (60) days after the trustee's appointment.

## **CONCLUSION**

18. For the reasons set forth herein, the Debtor cannot meet its burden to provide MGCC with the adequate protection that MGCC is entitled to receive under the Bankruptcy Code, and, therefore, MGCC respectfully requests that this Court deny the Cash Collateral Motion, or otherwise condition any such grant consistent with the terms outlined herein.

19. MGCC also reserves the right to raise other and further objections to the Cash Collateral Motion should it proceed further on the merits.

WHEREFORE, MGCC respectfully requests that this Court enter an order (i) denying the Cash Collateral Motion, or (ii) conditioning the use of any Collateral, including Cash Collateral, on the Debtor's providing adequate protection to MGCC as set forth herein, and (iii) granting such further relief as the Court deems just and proper.

Dated: November 1, 2019

Respectfully submitted,
MASSACHUSETTS GROWTH
CAPITAL CORPORATION
By its attorney,


 /s/ James M. Liston
James M. Liston (BBO # 301750)
jml@bostonbusinesslaw.com
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA  02110
Tel. (617) 422-0200