*PROPOSED ORDER*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In Re: ) | |
| ) | |
| **SOMERVILLE BREWING COMPANY** ) | Chapter 11 |
| ) | Case No. 19-13300-FJB |
| **DEBTOR** ) | |
| ) | |

**ORDER APPROVING MOTION**
**AUTHORIZING THE DEBTOR TO SELL PERSONAL PROPERTY AND EQUIPMENT**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**
**AND TO USE INTERNET AUCTION MECHANISM**

This matter having come before the Court upon the Assented to Motion by Somerville Brewing Company, seeking an order authorizing the Debtor, pursuant to 11 U.S.C. § 363(b), (f) and (m), Fed. R. Bankr. P. 6004 and MLBR 6004-1, to sell, assign and transfer by public auction the Debtor's right, title and interest in all of its personal property and equipment free and clear of all liens, claims, interests, and encumbrances (the "Motion to Sell");

And this Court having jurisdiction to consider the Motion to Sell and notice of the Motion to Sell and any hearing thereon having been sufficient according to the certificates of service filed with the Court; and after due deliberation the Court having determined that the relief requested in the Motion to Sell is in the best interests of the Debtor and its estate and good and sufficient cause having been shown;

It is hereby Ordered that the Motion to Sell is allowed and it is further found that:

1. The Public Auction will take place via on-line at both of the locations operated by the Debtor which are at 15 Ward Street, Somerville, Massachusetts ("**Ward Street**") and 490 Foley Street, Somerville, MA 02145 ("**Assembly Row**") and online through the Internet Auction Mechanism.

2. The Public Auction shall be conducted by the Debtor's auctioneer, Paul E. Saperstein Co., Inc. at the Debtors locations as follows: Assembly Row on August 19, 2020 at 11:00 a.m. and Ward Street on August 20, 2020 at 11:00 a.m.

3. The sale of the Property shall be free and clear of all liens, claims, interests and encumbrances, with any such liens, claims, interests and encumbrances in the Property attaching to the proceeds to the same extent, and in the same order of priority as such liens, claims, interests and encumbrances were valid, perfected, and enforceable against the Property as of Petition Date.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363, as well as Fed. R. Bankr. P. 6004 and MLBR 6004-1(b).

6. The Debtor has established that the sale by a Public Auction rather than a private sale is in the best interest of the Estate.

7. The Property to be sold at the Public Auction is all of the personal property of the Debtor at both of the respective locations. The equipment to be sold is identified on the Debtor's Schedules at parts 7 and 8 filed October 30, 2019. [Doc. No. 50].

8. The Debtor accepted an Offer for the purchase of certain assets located at the Assembly Row location from Street Retail, Inc., the landlord for the premises (the "Stalking Horse Bidder") as follows:

> "…. $85,000, plus a release of claims against the bankruptcy estate, in exchange for all of the equipment and personal property located at the Assembly Row premises when our client inspected the same on May 19, 2020, plus a release of any claims the estate may have against Street Retail…Street Retail is not purchasing any of the debtor's rights in any leases or executory contracts…"

9. Specifically excluded from the Offer to purchase from the Stalking Horse Bidder are the leased equipment and executory contracts which are defined in the Motion as the "Assembly Row Leased Equipment".

10. The Assembly Row Leased Equipment is as follows:

M2 Lease Funds, LLC:

R5.5i TAS 7.5 HP Compressor, MA Pedestals for Compressor, Restaurant equipment as stated on order acknowledgement from Pioneer Sales Company, Weber Can Printer, 82 MEK US Power, Ink MEK Black, 5 Bottles/Case. Makeup, MED, 5 Bottles /Case, Bottle, Wash MEK, Beaker, Wash, Photocell, Laser Kit, Stand, Stainless Steel Weber, Mount, Printhead Floor as stated on invoice from Weber Labels & Labeling Systems, WGC-250 Canning System, Depal-Pneu Assist DEPAL-PA, Brewery Chiller and Pilot Pro Electric Base and Wild Goose Can Depaletizer.

Financial Pacific Leasing, Inc.

(3) 5bbl Brite Tank, (3) 3.5bbl Brite, (3) 3.5 Fermenter, Gillette Restaurant Equipment and 1 Norlake 8' x 10' x 7.7' tall walk in cooler w/indoor remote left hand hinged door compressor.

11. At the Public Auction, all interested parties shall be entitled to bid on the equipment and personal property located at the Assembly Row premises including but not limited to the assets which are the subject of the stalking horse bid and the debtor's rights in the Assembly Row Leased Equipment as defined in the Motion to Sell with all other terms and conditions, except as to price, shall be unchanged.

12. Upon conclusion of the Public Auction sale, the Stalking Horse Bidder shall be entitled to increase the amount of its Stalking Horse Bid of $85,000.00 to not less than five (5%) in excess of the highest bid received and to increase the amount of the bid for the entirety of the assets which are the Assembly Row Leased Equipment.

13. The Debtor shall sell the assets which are the subject of the Stalking Horse Bid and the assets which are the subject of any leases or executory contracts in effect in separate sale lots with all liens, claims and encumbrances attaching to the sale proceeds of the respective assets as sold, in the order of their priority.

14. Multiple creditors have asserted claims which are secured by all asset blanket security interests in the Property and alleged entitlement to proceeds in the following order of priority:

   a. First, Cambridge Trust Company ("**CTC**")
   b. Second, Massachusetts Growth Capital Corporation ("MGCC
   c. Third, Federal Realty Investment Trust. ("FRIT").
   d. Fourth, On Deck Capital Inc.
   e. Fifth, Commonwealth of Massachusetts, Department of Unemployment Assistance. ("DUA").
   f. Sixth, American Express National Bank ("AMX")

15.     Multiple creditors assert a security interest on, or other property interests in certain discretely identified Property subject to this Motion and are defined as the "Discrete Collateral", specifically:

a. <u>Financial Pacific Leasing, Inc</u>. pursuant to an equipment lease agreement for the equipment described as (3) 5bbl Brite Tank, (3) 3.5bbl Brite, (3) 3.5 Fermenter, Gillette Restaurant Equipment and 1 Norlake 8' x 10' x 7.7' tall walk in coole r w/indoor remote left hand hinged door compressor.
b. <u>Crestmark Vendor Finance, a division of MetaBank</u> pursuant to an equipment finance agreement and security interest on the Franke Beer Kegs.
c. <u>Corporation Service Company as Representative of Ascentium</u> pursuant to a UCC-1 financing agreement secured by the Grace Material Mezzanine, 2 office platforms, 1 tank platform, the 55 Gallon Glycol Drum and Refractometer; and a Wild Goose WGC-250 canning line (4 Auto Fill Heads), Auto Lid Drop, Auto Steamer, WGC Rinse Tunnel/Air Nozzle, Inlet Pressure/Temperature Monitoring with Multiport Liquid Infeed Manifold.
d. <u>M2 Lease Funds, LLC</u> pursuant to equipment leases which are described as follows:
    (i) <u>Lease dated November 17, 2016</u>: R5.5i TAS 7.5 HP Compressor, MA Pedestals for Compressor, Restaurant equipment as stated on order acknowledgement from Pioneer Sales Company, Weber Can Printer, 82 MEK US Power, Ink MEK Black, 5 Bottles/Case. Makeup, MED, 5 Bottles /Case, Bottle, Wash MEK, Beaker, Wash, Photocell, Laser Kit, Stand, Stainless Steel Weber, Mount, Printhead Floor as stated on invoice from Weber Labels & Labeling Systems, WGC-250 Canning System, Depal-Pneu Assist DEPAL-PA.
    (ii) <u>Lease dated April 4, 2017</u>: Brewery Chiller and Pilot Pro Electric Base, Wild Goose Can Depaletizer.

16.     CTC and MGCC have consented to the sale of the Property on the terms set forth in the Motion and agree that to the extent any valid, perfected liens, claims, interests or encumbrances existed as to the personalty of the Debtor on the Petition Date, those liens, claims, interests and encumbrances shall attach to the sale proceeds to the same extent, and in the same order and priority as of the Petition Date.

17.     Any monies that may be due and owing regarding any such liens will not be the responsibility of the successful purchaser.

18.     In the event that Street Retail, Inc. is the successful bidder on the assets subject to the Stalking Horse Bid, Street Retail, Inc. shall release its claims against the Debtor and shall receive a release of any claims the estate may have against Street Retail.

19.     Three (3) weeks following the removal of the assets upon completion of the auction, the lease with Street Retail for the Assembly Row location will be rejected and Street Retail will have possession of the Assembly Row premises.

20. The value of the secured claims asserted against the Discrete Collateral shall be determined pursuant to 11 U.S.C.§506(a) based upon the sale price obtained for each item of the Discrete Collateral which shall be sold in discrete and separate lots.

21. All proceeds from the sale of the Property, including the proceeds from the sale of the Discrete Collateral shall be held in escrow by Counsel to the Debtor in the Parker & Lipton IOLTA account until further order of the Bankruptcy Court.

22. Within ten (10) business days of receipt of the report from the Auctioneer on the outcome of the Auction and the invoice from the Auctioneer, the Debtor shall submit a Report of Auction Outcome ("Report") and a Motion to Approve the Proposed Distribution of Sale Proceeds ("Motion to Disburse") and an Application for Compensation on behalf of the Auctioneer ("Application for Compensation of Auctioneer"). The Report will detail the sums generated from the sale; the Motion to Disburse shall set forth the proposed distribution of the sale proceeds after payment of the sums to the Auctioneer in accordance with the Application for Compensation and apportioned as to the respective interest holders.

23. The Debtor served copies of the Report, Motion to Disburse and Application for Compensation upon the following parties: (a) the U.S. Trustee, (b) all parties that requested notice in this chapter 11 case pursuant to Bankruptcy Rule 2002 and (c) all parties with asserted interests in the Property.

24. The amount of the Auctioneer's compensation and payment of expenses will be in accordance with MLBR 6004-1 and as set forth in the Motion to Sell.

25. The following are the procedures in connection with the Public Auction of the Property:

   a. The Property shall be transferred on an "as is, where is" basis, without any representation or warranty of any kind by the Debtor or the Auctioneer.
   b. Pursuant to section 363(f) of the Bankruptcy Code, the Property shall be sold free and clear of any liens, claims, encumbrances and interests, with such liens, claims, encumbrances and interests, if any, attaching to the proceeds of such sale to the same extent, and in the same order of priority as those liens, claims, interests and encumbrances were valid, perfected, and enforceable against the Property on the Petition Date.
   c. The successful bidder for any of the Property being sold (including any party asserting a security interest in the Property) shall tender to the Debtor a deposit on the day of the auction equal to twenty five percent (25%) of its bid for the purchased Property.
   d. There shall be no credit bidding permitted due to the potential for multiple claims asserted as to certain of the Property.

    e. A successful bidder shall pay the balance of the purchase price by wire transfer or endorsed bank or certified check to the Auctioneer in accordance with the terms announced at the Public Auction, and in all events prior to the removal of any purchased Property.

    f. The Stalking Horse Bidder shall be entitled to the opportunity to advance an overbid at the conclusion of the auction for the entirety of the assets located at Assembly Row, including the sums bid for the Assembly Row Leased Equipment, so long as the minimum increase is not less than five percent (5%) of the highest offer(s) received.

    g. The Auctioneer shall offer for sale in separate lots the Discrete Collateral.

    h. The terms for the removal of the Property by the successful bidder shall be announced at the auction. The successful bidder must comply with the announced terms for removal or shall forfeit the deposit and the right to purchase the Property.

    i. To the extent that the Debtor does not consummate a sale to highest bidder for any Property for any reason, the Debtor, in its discretion, may sell such Property to the next highest bidder for the Property that shall successfully tender the required deposit to the Debtor within three (3) business days of written notice of default of the previous highest bidder without further Court order.

    j. The Debtor may, at or before the sale, impose such other and additional terms and conditions as they determine to be in the best interests of the Debtor and its estate, creditors, and other parties in interest.

    k. Additional terms may be announced by the Auctioneer at the time of the sale.

26. Absent opposition to the Motion to Disburse and upon entry of a final Order approved by the Court setting forth payment to the respective parties asserting claims on the proceeds from the sale of the Property including the Discrete Collateral, the proceeds from the sale, net of the proportionate share of the Auctioneer's fees and expenses shall be distributed as set forth in the Order approving the Motion to Disburse.

27. In the event of dispute in some, but not all of the sale proceeds, the Debtor shall disburse those sums which are not disputed and as authorized by the Motion to Disburse within five (5) business days following entry of a final order on the Motion to Disburse as to the payment of undisputed sale proceeds. The Debtor shall hold the disputed sums in the Parker & Lipton IOLTA account pending a determination of a Complaint for Interpleader and Declaratory Relief ("Complaint") if required. The Complaint shall be filed within ten (10) business days following entry of a final Order in connection with the Motion to Disburse or such further Order of the Bankruptcy Court.

28. Within five (5) business days following entry of a final order and determination of any Complaint as to the claimant(s) entitled to payment from the proceeds realized from the sale of the Property the sale proceeds shall be distributed.

29. Within ten (10) business days following distribution, a Report of the Distribution shall be filed with the Bankruptcy Court.

30. Except as expressly set forth herein, nothing in this Order shall be deemed to impair or prejudice the rights and remedies of creditors to assert the right to their claims in the proceeds by a determination on the Motion to Disburse or the Complaint for Interpleader or under the Further Order or applicable law.

Entered as of _____ \_\_\_, 2020 at Boston, Massachusetts.

_____
Frank J. Bailey
United States Bankruptcy Judge